1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| SY LEE CASTLE, | ) No. C 12-2193 LHK (PR) |
| Plaintiff, | ) ORDER GRANTING |
| | ) DEFENDANT'S MOTION FOR |
| v. | ) SUMMARY JUDGMENT |
| DR. M. SEPULVEDA, | ) |
| Defendant. | ) (Docket No. 20) |

Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42

U.S.C. § 1983 against Defendant, former Chief Medical Officer Dr. M. Sepulveda

("Defendant"), at Salinas Valley State Prison ("SVSP").  In his complaint, Plaintiff alleges that

Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth

Amendment.  Defendant has moved for summary judgment.  Although given an opportunity,

Plaintiff has not filed an opposition.  Having carefully considered the papers submitted, the

Court GRANTS Defendant's motion for summary judgment, for the reasons set forth below.

## BACKGROUND

A.    Relevant Facts

The following facts are taken in the light most favorable to Plaintiff, and are undisputed

unless otherwise indicated.

Plaintiff is a disabled, permanently mobility impaired inmate.  (Compl. at 3.)  He has a

spinal cord injury, and suffers from muscle spasms, muscle loss, loss of motor coordination, paralysis, chronic lower back pain, and irregular bowel movements.  (*Id.*)  Defendant is the former Chief Medical Officer at SVSP.  (Decl. Sepulveda at ¶ 2.)

On July 14, 2010, Plaintiff was seen by his primary care physician while at Kern Valley State Prison.  (*Id.* at ¶ 6.)  Plaintiff informed his doctor that Baclofen was effective in treating his muscle spasms.  (*Id.*)  On August 6, 2010, Plaintiff was prescribed the pain medication, Neurontin,[1] for 30 days.  (Compl. at 3.)  Dr. Reynaldo Santa Mina, a neurologist, indicated that Plaintiff's neuropathic pain and muscle spasms may be treated with a gradual and conservative dose of gabapentin.  (Decl. Sepulveda at ¶ 5.)  On August 9, 2010, Plaintiff was prescribed Nortriptyline to treat his pain, in addition to Plaintiff's current prescription of gabapentin.  (*Id.* at ¶ 7.)

On August 23, 2010, Plaintiff was transferred to SVSP.  (Compl. at 3.)  On September 7, 2010, Plaintiff's gabapentin ran out, and Plaintiff requested a refill from Dr. Biller.  (*Id.*)  Plaintiff explained that he was in chronic pain.  (*Id.*)  Dr. Biller informed Plaintiff that Defendant had directed her not to renew the pain medication, and Plaintiff would just have to live with the pain.  (*Id.*)  At this time, Plaintiff was still receiving Nortriptyline for pain.  (Decl. Sepulveda, Ex. A at AGO 019.)

On September 13, 2010, Plaintiff was seen by another doctor, and Plaintiff informed that doctor that Plaintiff was suffering from chronic neck and lower back pain.  (Compl. at 3-4.)  Plaintiff again requested a refill of gabapentin.  (*Id.* at 4.)  According to Plaintiff, the doctor informed Plaintiff that Defendant instructed the doctor not to renew any pain medications.  (*Id.*)  Nonetheless, Plaintiff's prescription for Nortiptyline was increased from 20 milligrams to 30 milligrams.  (Decl. Sepulveda at ¶ 9, Ex. A at AGO 033.)

On September 23, 2010, Plaintiff's primary care physician, Dr. Peter Perez, indicated in his progress note that Plaintiff's prescriptions for Baclofen and Nortriptyline were sufficient to

---

[1]  Neurontin is Pfizer's version of the medication, gabapentin.  (Decl. Sepulveda at ¶ 5.)  Gabapentin is an anticonvulsant, anti-seizure medication that can also be used to treat neuropathic pain. (*Id.*)

1   treat Plaintiff's muscle spasms and neuropathic pain.  (Decl. Sepulveda at ¶ 10, Ex. A at AGO

2   040.)  Dr. Perez recommended continuing with the current treatment plan.  (Decl. Sepulveda at ¶

3   10, Ex. A at AGO 040.)  Dr. Perez also remarked that, upon review of Plaintiff's medical chart,

4   previous medical staff believed that Plaintiff's behavior was "highly suspicious for malingering

5   and chronic manipulation to get narcotic medications."  (Decl. Sepulveda, Ex. A at AGO 040.)

6   After reviewing Plaintiff's charts, Dr. Perez concluded that, since Plaintiff's arrival from Kern

7   Valley State Prison, Plaintiff was continuing to show a consistent pattern of that behavior.  (*Id.*)

8   Dr. Perez assessed that Plaintiff had a "[h]istory of chronic neck and lumbar spine pain and

9   chronic documentable history of chronic malingering, fake paralysis, and narcotic drug-seeking."

10  (*Id.*)

11          On October 4, 2010, Plaintiff filed an administrative appeal, requesting that his

12  prescription for gabapentin be refilled.  (Doc. No. 14 at 8.)

13          On October 6, 2010, Plaintiff was seen by Dr. Darrin Bright for a consultation under the

14  Americans with Disabilities Act.  (Decl. Sepulveda at ¶ 11.)  Dr. Bright opined that Plaintiff's

15  claims of paralysis were inconsistent with the neurological examinations.  (*Id.*, Ex. A at AGO

16  045.)  Dr. Bright noted that medical staff and officers had observed Plaintiff walking without a

17  wheelchair, walker, or cane.  (Decl. Sepulveda at ¶ 11, Ex. A at AGO 045.)  Dr. Bright further

18  noted that Plaintiff had good muscle tone and mass in his upper and lower extremities.  (Decl.

19  Sepulveda at ¶ 11, Ex. A at AGO 045.)  Dr. Bright recommended that Plaintiff's pain

20  management program not be changed.  (Decl. Sepulveda at ¶ 11.)

21          On November 17, 2010, Plaintiff's administrative appeal was granted in part at the first

22  level of review.  (Doc. No. 14 at 9.)  The reviewer stated that there was no order for gabapentin

23  at that time; that Plaintiff was receiving pain medication; and that Plaintiff could raise the issue

24  at his upcoming medical appointment.  (*Id.*)  On December 9, 2010, Plaintiff appealed that

25  decision, and stated that the Nortriptyline was ineffective and that Plaintiff was experiencing

26  chronic pain in his neck.  Plaintiff also claimed that he had been requesting gabapentin since

27  September 2010.  (*Id.*)  At the second level of review, on December 28, 2010, Plaintiff's appeal

28  was denied.  (*Id.* at 7.)  Defendant reviewed Plaintiff's appeals and medical records, and

Order Granting Defendant's Motion for Summary Judgment
G:\PRO-SE\LHK\CR.12\Castle193msj.wpd          3

1   concluded that "there is no data that demonstrates Neurontin is superior to help in spinal cord

2   injury." (*Id.*)  Plaintiff appealed the second level of review decision.

3          On February 23, 2011, Plaintiff was seen by Dr. Birdsong.  (Decl. Sepulveda at ¶ 14.)

4   Dr. Birdsong noted that Plaintiff was complaining about pain in his back and neck.  (*Id.*)

5   Plaintiff again requested gabapentin for his spinal cord injury.  (*Id.*)  Dr. Birdsong noted that an

6   electromyogram showed no damage to Plaintiff's nerve roots in parts of Plaintiff's spine.  (*Id.*,

7   Ex. A at AGO 082.)  Dr. Birdsong refilled Plaintiff's prescriptions for Baclofen and

8   Nortriptyline, and added Tylenol.  (Decl. Sepulveda at ¶ 14, Ex. A at AGO 082.)  On that day,

9   Dr. Birdsong did not recommend nor prescribe gabapentin.  (Decl. Sepulveda at ¶ 14, Ex. A at

10   AGO 082.)

11          On June 15, 2011, Dr. Birdsong observed that Plaintiff had repeatedly requested

12   gabapentin as pain medication.  (Decl. Sepulveda at ¶ 15.)  After Dr. Birdsong concluded that the

13   Nortriptyline and Tylenol appeared to be insufficient to treat Plaintiff's pain, Dr. Birdsong

14   prescribed gabapentin, which Defendant approved.[2]  (*Id.* and Ex. A at AGO 114-115.)

15          On June 29, 2011, at the Director's level of review, Plaintiff's administrative appeal was

16   denied.  The reviewer recognized that Plaintiff's current prescriptions were:  Tylenol with

17   Codeine, Baclofen, gabapentin, and Nortriptyline.  (Doc. No. 14 at 4.)

18          Plaintiff states that he had seen two neurologists previously, both of whom had

19   prescribed gabapentin for Plaintiff for neuropathic pain control related to his spinal cord injury.

20   (Compl. at 9.)  Plaintiff claims that he was without gabapentin for over nine months because Dr.

21   Sepulveda refused to allow it to be refilled.  Plaintiff alleges that the refusal constituted

22   deliberate indifference to Plaintiff's serious medical needs.

### ANALYSIS

23

24   A.     Standard of Review

25

26          [2]  At the time, prescriptions for non-psychiatric use of gabapentin required approval by a

27   Health Care Manager.  (Decl. Sepulveda, Ex. A at AGO 114.)  It appears that, because
     Defendant was a senior member of the health care management team and advisor to the Health

28   Care Services Division, his approval was necessary to fulfill the prescription request for
     gabapentin.

1       Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

2 that there is "no genuine issue as to any material fact and that the moving party is entitled to

3 judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect

4 the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute

5 as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

6 verdict for the nonmoving party. *Id.*

7       The party moving for summary judgment bears the initial burden of identifying those

8 portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

9 issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving

10 party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

11 reasonable trier of fact could find other than for the moving party. But on an issue for which the

12 opposing party will have the burden of proof at trial, as is the case here, the moving party need

13 only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

14 at 325.

15       Once the moving party meets its initial burden, the nonmoving party must go beyond the

16 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

17 genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over

18 material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

19 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is not the task of the court to scour

20 the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th

21 Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity,

22 the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this

23 showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S.

24 at 323.

25       At the summary judgment stage, the Court must view the evidence in the light most

26 favorable to the nonmoving party: if evidence produced by the moving party conflicts with

27 evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

28 forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,

1   1158 (9th Cir. 1999).

2   B.   Plaintiff's Claim

3   Liberally construed, Plaintiff claims that Defendant was deliberately indifferent to his

4   serious medical needs by failing to approve or allow Plaintiff to refill his prescription for

5   gabapentin.  Defendant argues that he is entitled to judgment as a matter of law because the

6   evidence is undisputed that he did not have the requisite culpable state of mind to meet the

7   deliberate indifference standard.

8   Deliberate indifference to serious medical needs violates the Eighth Amendment's

9   proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104

10  (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by*

11  *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A

12  determination of "deliberate indifference" involves an examination of two elements: the

13  seriousness of the prisoner's medical need and the nature of the defendant's response to that

14  need.  *See McGuckin*, 974 F.2d at 1059.

15  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

16  risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

17  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

18  facts from which the inference could be drawn that a substantial risk of serious harm exists," but

19  he "must also draw the inference."  *Id.*  If a prison official should have been aware of the risk,

20  but was not, then the official has not violated the Eighth Amendment, no matter how severe the

21  risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

22  Even assuming that Plaintiff had a serious medical need, there is no genuine issue of

23  material fact in dispute about whether Defendant exhibited deliberate indifference with regard to

24  Plaintiff's requests for gabapentin.  The record shows that, one month after Plaintiff arrived at

25  SVSP, Plaintiff's primary care doctor reviewed Plaintiff's medication list, and concluded that

26  Baclofen and Nortriptyline were sufficient to treat Plaintiff's neuropathy and spastic pain.  (*Id.* at

27  ¶ 10.)  Less than one month after that, Dr. Bright agreed.  (*Id.* at ¶ 11.)

28  Moreover, Defendant has provided evidence about the CDCR Pharmacy and

1   Therapeutics Committee ("PTC"), a group of physicians who provide an evidence-based

2   approach, review drug efficacy, and set medication policies for CDCR physicians to follow.

3   (Decl. Sepulveda at ¶¶ 16-17.)  In November 2010, the PTC issued a directive to remove

4   gabapentin from the CDCR formulary and restrict its use to patients with seizures, nerve pain

5   from shingles, or patients with objective evidence of serious disease.  (*Id.* at ¶ 17.)  Further, the

6   CDCR pain management guidelines recommend that doctors treat neuropathic pain by first using

7   tricyclic antidepressants like Nortriptyline.  (*Id.* at ¶ 18.)  Plaintiff's medical records did not

8   show evidence of a serious disease, warranting the use of gabapentin.  (*Id.* at ¶ 19.)  Plaintiff's

9   MRI results did not show spinal cord compression.  (*Id.*)  Dr. Bright's 2010 report indicated that

10  Plaintiff had good muscle tone and mass in his extremities and could walk without assistance.

11  (*Id.*)  Upon review of Plaintiff's medical records, at the time Defendant denied Plaintiff's

12  administrative appeal, Defendant's medical opinion was that Plaintiff's current prescription of

13  Nortriptyline was sufficient to treat Plaintiff's muscle pain.  (*Id.*)

14          In addition, Defendant asserts that he denied Plaintiff's request for gabapentin in

15  response to Plaintiff's administrative appeal based on his own experience, the PTC directive, and

16  the CDCR Pain Management Guidelines.  (*Id.* at ¶ 16.)  At the time of Plaintiff's administrative

17  appeal, Defendant opined that there was no data demonstrating that gabapentin was superior in

18  treating spinal cord injuries.  (*Id.* at ¶ 20; Doc. No. 14 at 5.)  Defendant declares that his opinion

19  was supported by medical journal articles and studies, and cites to several as examples.  (Decl.

20  Sepulveda at ¶ 20.)  Defendant declares that he has never reviewed an article stating that

21  gabapentin is superior to "tricyclic antidepressants such as Nortriptyline in the treatment of

22  neuropathic pain," and in fact, some studies find gabapentin to be less effective.  (*Id.*)  Plaintiff

23  has not provided any evidence to the contrary.

24          "A difference of opinion between a prisoner-patient and prison medical authorities

25  regarding treatment does not give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337,

26  1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of medical opinion

27  as to the need to pursue one course of treatment over another is insufficient, as a matter of law,

28  to establish deliberate indifference.  *See Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir.

2004).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health.  *Id.* at 1058.

Based on the record, the Court concludes that no reasonable inference can be drawn that Defendant knew that Plaintiff was faced with a substantial risk of harm if he was not given gabapentin, nor that Defendant disregarded a substantial risk of harm.  *See Farmer*, 511 U.S. at 837.  At most here, Plaintiff has a difference of opinion as to whether Defendant should have approved Plaintiff's repeated requests for gabapentin.  Plaintiff has provided nothing to suggest that Defendant's actions or inactions were medically unacceptable under the circumstances, or that his decisions were chosen in conscious disregard to Plaintiff's health.  *See id.*

## CONCLUSION

Accordingly, Defendant's motion for summary judgment is GRANTED.

The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED:  7/16/13

LUCY H. KOH
United States District Judge